**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **KATHLEEN M. LATZA**<br>2110 Candlewood Drive<br>Avon, OH 44011<br><br>          Plaintiff,<br><br>   v.<br><br>**SPECIALIZED LOAN SERVICING, LLC**<br>c/o United Agent Group Inc.<br>119 E. Court Street<br>Cincinnati, Ohio 45202<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiff Kathleen M. Latza ("Plaintiff"), by and through counsel, states as follows for her Complaint against Defendant Specialized Loan Servicing, LLC ("Defendant"):

### WHY PLAINTIFF IS FILING THIS CASE

1.     Like many people, Plaintiff encountered hardship due to the COVID-19 pandemic.  When Plaintiff had problems paying her mortgage, she contacted Defendant in order to obtain information regarding loss mitigation options available to her.  Specifically, in May of 2020 Plaintiff requested a forbearance plan being offered by the owner of her mortgage loan, Federal Home Loan Mortgage Corporation ("Freddie Mac"). Despite Plaintiff making multiple requests for a forbearance, Defendant subsequently failed to enter Plaintiff into a forbearance plan as required by Freddie Mac. Plaintiff submitted notices of errors in an effort to have Defendant correct the error, but Defendant has repeatedly failed to properly respond to the same in violation of RESPA and has refused to make things right to date.

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff is the owner of real property located at 2110 Candlewood Drive, Avon,

OH 44011 (the "Home").

3.     On October 29, 2002, Plaintiff borrowed money to purchase the Home and executed a note in the amount of $90,000.00 payable to Home Mortgage Assured Corporation (the "Note"), and, to secure payment of the Note, Plaintiff granted a contemporaneous mortgage lien on the Home (the "Mortgage").   A copy of the Note and a copy of the Mortgage (collectively, the "Loan") is attached as ***Plaintiff's Exhibit 1.***

4.     Plaintiff currently maintains the Home as her primary, principal residence, and has so maintained the Home at all times relevant.

5.     Defendant is the current servicer of the Loan, having acquired servicing rights to the Loan effective November 1, 2019. A copy of the Notice of Servicing Transfer is attached as ***Plaintiff's Exhibit 2.***

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

7.     This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

8.     This Court has supplemental jurisdiction to hear all state law statutory claims pursuant to 28 U.S.C. § 1367.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District.

## SUMMARY OF CLAIMS

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage

markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

12. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

13. Defendant is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

14. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

15. Plaintiff asserts a claim for relief against Defendant for violating 12 U.S.C. §§ 2605(k)(1)(C) and (E) as well as 12 C.F.R. §§ 1024.35 and 1024.36 under Regulation X as set forth, *infra*.

16. Plaintiff also asserts statutory claims for violations of the Consumer Sales Practice Act, R.C. 1345.01, *et seq.* (CSPA) and the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

17. Defendant is subject to the requirements of the RMLA, and does not qualify for the exemptions listed in R.C. 1322.04.

18. Defendant is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the

mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

19.     Defendant is a supplier, Plaintiff is a consumer, and the Loan is a consumer transaction, subject to the requirements of the CSPA.

## BACKGROUND

20.     In March of 2020, Plaintiff became unemployed due to the COVID-19 pandemic.

21.     On March 1, 2020, Plaintiff was current or less than 31 days delinquent on the Loan.

22.     In May of 2020, Defendant reached out to Plaintiff via telephone in order to discuss the most appropriate options for delinquency resolution.

23.     During this telephone conversation, Plaintiff asked Defendant for information regarding loss mitigation options that may be available to her, including forbearance plans, but Defendant failed to provide her with the requested information.

24.     Frustrated and in fear of losing the Home, Plaintiff retained counsel to assist her with obtaining information from Defendant regarding available loss mitigation options.

25.     On or about June 22, 2020, Plaintiff sent each of the following pieces of correspondence (collectively, the "RFIs"), each classified as a request for information pursuant to 12 C.F.R. § 1024.36, to Defendant *via* Certified U.S. Mail:

   a.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking a reinstatement quote and information regarding loss mitigation correspondence for the Loan ("RFI #1"). A copy of RFI #1 is attached as ***Plaintiff's Exhibit 3***;

   b.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning Plaintiff's attempt at obtaining

a forbearance on the Loan ("RFI #2"). A copy of RFI #2 is attached as *Plaintiff's Exhibit 4*;

26.     Defendant received each of the RFIs on or before June 26, 2020.  A copy of the USPS tracking information for the RFIs is attached a**s** *Plaintiff's Exhibit 5***.**

27.     Defendant received each of the RFIs at the address which it held out and designated as the address for borrowers of loans it services to send such requests.

28.     On July 5, 2020 Plaintiff submitted a written request to be entered into a six (6) month forbearance plan pursuant to Freddie Mac guidelines (the "Forbearance Request").  A true and accurate copy of the Forbearance Request is attached as *Plaintiff's Exhibit 6*.

29.     The Forbearance Request specifically requested that Plaintiff be entered into a six (6) month forbearance pursuant to Freddie Mac Bulletins 2020-4 and 2020-10.

30.     The rules and regulations relative to the servicing of mortgage loans for single family homes owned by Freddie Mac—such as Plaintiff's Mortgage—are set forth in the *Freddie Mac Single-Family Seller/Servicer Guide* ("Freddie Mac Servicer Guide").[1]

31.     Specifically, the Freddie Mac Servicer Guide notes that no Borrower documentation or written application is required from the Borrower.  See Freddie Mac Servicer Guide at 9203.13(a).  Further Freddie Mac Bulletin 2020-10, which was enclosed within the Forbearance Request, provides that:

> [i]n the event the Servicer and Borrower cannot agree on an appropriate forbearance length, or further communication with the Borrower is not possible under the circumstances, the Servicer *must* provide the term requested by the Borrower, not to exceed 180 days (emphasis added).

---

[1] The Freddie Mac Servicer Guide has undergone multiple revisions, but the portions thereof applicable to this case have been in force at all times relevant.  Accordingly, all citations to the Freddie Mac Servicer Guide set forth herein are to the most recent version, which was issued on February 10, 2021.  The Freddie Mac Servicer Guide is publicly available at: https://sf.freddiemac.com/tools-learning/sellerservicer-guide/overview.

*See Plaintiff's Exhibit 6.*

32.     Despite the above, on or about July 7, 2020 Defendant sent correspondence to Plaintiff requesting additional documentation in order to complete its review of the Forbearance Request.  A copy of such correspondence is attached as ***Plaintiff's Exhibit 7.***

33.     Defendant responded to the RFIs through correspondence dated July 7, 2020 (the "Response to the RFIs").  A copy of the Response to the RFIs is attached as ***Plaintiff's Exhibit 8.***

34.     Through the Response to the RFIs, Defendant failed to provide Plaintiff with all of the requested information, specifically failing to provide:

        a.      A complete response to paragraph 1 of RFI #1[2];

        b.      A detailed copy of all analyses of the escrow account conducted by Defendant pursuant to paragraph 5 of RFI #1;

        c.      A reinstatement quote pursuant to paragraph 6 of RFI #1;

        d.      Any substantive response to paragraphs 7, 8, 9, 10, 11, 12, and 13 of RFI #1; and,

        e.      Any substantive response to RFI #2

See ***id.***

35.     On or about August 7, 2020, Defendant sent correspondence (the "Response to the Forbearance Request") advising that because "the application remains incomplete [it has] been unable to evaluate the account for loss mitigation assistance and…[is] no longer actively processing the request".  A copy of the Response to the Forbearance Request is attached as ***Plaintiff's Exhibit 9.***

---

[2] Defendant's Payment Histories/Customer Account Activity Statement does not contain payment information prior to January 6, 2014.

36.     To obtain the information requested by and through the RFIs to which the Plaintiff is legally entitled, Plaintiff subsequently sent correspondence dated August 31, 2020 captioned "Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for failure to properly respond to requests for information as required by 12 C.F.R. §1024.36(d) and 12 U.S.C. §2605(k)(1)(E)" noticing an error for Defendant's failure to respond to the RFIs ("NOE #1"). A copy of NOE #1 is attached as ***Plaintiff's Exhibit 10.***

37.     Defendant received NOE #1 on or before September 9, 2020.  A copy of the USPS tracking information for NOE #1 is attached a**s *Plaintiff's Exhibit 11*.**

38.     Defendant received NOE #1 at the address which it held out and designated as the address for borrowers of loans it services to send such notices.

39.     As a result of the Response to the Forbearance Request, on or about September 24, 2020, Plaintiff, through counsel, sent correspondence to Defendant consisting of or otherwise comprising a notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) ("NOE #2"), asserting that Defendant failed to provide accurate information to a borrower regarding loss mitigation options and foreclosure as required by 12 C.F.R. § 1024.38(b)(2).  A copy of NOE #2 without enclosures is attached as ***Plaintiff's Exhibit 12.***

40.     Defendant received NOE #2 on or before October 2, 2020.  A copy of the USPS tracking information for NOE #2 is attached a**s *Plaintiff's Exhibit 13*.**

41.     Defendant received NOE #2 at the address which it held out and designated as the address for borrowers of loans it services to send such notices.

42.     On or about October 5, 2020 Defendant sent correspondence in response to NOE #1 (the "Response to NOE #1"). A copy of the Response to NOE #1 without enclosures is attached as ***Plaintiff's Exhibit 14.***

43. In the Response to NOE #1, Defendant provided Plaintiff with *some* additional information requested by the RFIs but still failed to provide all of the information to which Plaintiff is legally entitled, specifically again failing to to provide:

      a.     A complete response to paragraph 1 of RFI #1;

      b.     Any substantive response to paragraphs 7, 11, and 12 of RFI #1; and,

      c.     Any substantive response to RFI #2

See *id.*

44. As Defendant failed to perform a reasonable investigation into and did not correct the errors alleged in NOE #1 and failed to provide a response or correct the errors alleged in NOE #2, Plaintiff sent correspondence dated January 22, 2021 captioned "Notice of Errors pursuant to 12 C.F.R. §1024.35(b)(11) for failing to respond to a notice of error in violation of 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E)" ("NOE #3"). A copy of NOE #3 without enclosures is attached as ***Plaintiff's Exhibit 15***

45. Defendant received NOE #3 on or before January 29, 2021. A copy of the USPS tracking information for NOE #3 is attached a**s *Plaintiff's Exhibit 16*.**

46. Defendant received NOE #3 at the address which it held out and designated as the address for borrowers of loans it services to send such notices.

47. To date, Defendant has not performed a reasonable investigation into the errors alleged through the aforementioned notices of error and such errors persist.

### THE IMPACT ON PLAINTIFF

48. Defendant failed to properly service the Loan and take timely action to respond to Plaintiff's requests to correct errors relating to avoiding foreclosure and other standard servicer's

8

duties which has directly and proximately caused the following damages to Plaintiff:

    a.    Defendant has caused Plaintiff to suffer severe emotional distress driven by the fear that she might lose her Home and be evicted from her Home despite her request to be entered into a forbearance plan, to which she was entitled pursuant to Freddie Mac guidelines, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm; and,

    b.    Attorneys' fees, costs, and expenses in drafting, preparing, and sending, NOEs #1-3 which would not have been necessary but for Defendant's failure to properly respond to the RFIs, properly handle Plaintiff's request for a forbearance, and properly respond to Plaintiff's request to correct these errors.

## EVIDENCE OF DEFENDANT'S PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X

49.    Defendant's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Defendant's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

50.    At the time of the filing of this Complaint, Defendant has had at least One Thousand One Hundred Twenty Seven (1,127) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages.. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (http://www.consumerfinance.gov/complaint database/).

51.    Plaintiff has reviewed the CFPB's consumer complaint database and has

identified fifteen (15) complaints from other borrowers alleging RESPA violations by Defendant which evidence that Defendant has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The fifteen (15) aforementioned consumer complaints are attached as* **Plaintiff's Exhibit 17** *with the date, details, and a narrative disclosed by the consumer set forth in each complaint.*

### COUNT ONE: VIOLATIONS OF RESPA

**[Violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failure to reasonably investigate and properly respond to NOE #1 and NOE #2]**

52.     Plaintiff restates and incorporates the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

53.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

54.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

55.     12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, of receipt.

56.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

57.    A servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C).

58.    A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  12 U.S.C. § 2605(k)(1)(E).

59.    NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).  See *Plaintiff's Exhibit 10*.

60.    Plaintiff sent NOE #1 to Defendant at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Defendant received the same at such address.  *Id*.

61.    Through NOE #1, Plaintiff alleged that Defendant committed errors by failing to provide requested information relating to avoiding foreclosure and other standard servicer duties. See *Plaintiff's Exhibit 10*.

62.    Defendant received NOE #1 at the Designated Address on or before September 9, 2020. See *Plaintiff's Exhibit 11*.

63.    The Response to NOE #1 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). See *Plaintiff's Exhibit 14.*

64.    Defendant, through the Response to NOE #1, did not acknowledge that any of the

alleged errors occurred relating to their failure to respond to RFI #2 and state the date of the correction of these errors. *Id.*

65. Defendant, through the Response to NOE #1, inexplicably claimed that Plaintiff's requests were outside of the scope of information they deemed reasonable to address her concerns. See ***Plaintiff's Exhibit 14.*.**

66. Had Defendant conducted a reasonable investigation, it would have been readily apparent that RFI #2 was specifically targeted to loss mitigation attempts as to the Loan including attempts at obtaining a forbearance during the COVID-19 pandemic. Further, each of the requests were specifically tailored to the time during which the Borrower was attempting to obtain loss mitigation options for the Loan. Therefore, Defendant's statement that Plaintiff's requests were outside the scope of information deemed reasonable was an insufficient response to NOE #1. ***Id.***

67. To date, Defendant has failed to correct the errors asserted through NOE #1.

68. Defendant's failure to properly respond to NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

69. NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See ***Plaintiff's Exhibit 12***.

70. Plaintiff sent NOE #2 to Defendant at their Designated Address and Defendant received the same at such address. ***Id***.

71. Through NOE #2, Plaintiff alleged that Defendant committed errors by failing to provide accurate information regarding loss mitigation options available to her from Freddie Mac, the owner of the Loan. See ***Plaintiff's Exhibit 12***.

72. Defendant received NOE #2 at the Designated Address on or before October 2,

2020. See ***Plaintiff's Exhibit 13***.

73.     Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Defendant was required to respond to NOE #2 within thirty (30) business days of their receipt of NOE #2.

74.     Plaintiff did not receive a response to NOE #2 within the required time frame pursuant to 12 C.F.R. § 1024.35(d).  See ***Plaintiffs' Exhibit 15.***

75.     To this date, Defendant has failed to respond and correct the errors asserted through NOE #2.

76.     Defendant's failure to properly respond to NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

77.     Defendant's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and the rights of other similarly situated borrowers and in violation of Defendant's obligations under Regulation X of RESPA.  Defendant's pattern and practice as such is evidenced by their refusal to appropriately respond to and correct the errors Plaintiff alleged through NOE #1 and NOE #2.

78.     Plaintiff suffered damages as a direct and proximate result of Defendant's actions including incurring legal fees and expenses in the preparation and mailing of NOE #2 and NOE #3, and, ultimately, for the preparation, filing, and prosecution of this case to remedy Defendant's wrongful conduct.

79.     Additionally, Plaintiff has suffered, and continues to suffer, significant damages including other legal expenses, anxiety, and emotional distress, as further described, *supra*.

80.     As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. § 2605(f).

**COUNT TWO: VIOLATIONS OF RESPA**

**[Violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) for failure to properly respond to RFI #1 and RFI #2]**

81.     Plaintiff restates and incorporates the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

82.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

83.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower." Supplement I to Part 1024.

84.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
>   (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>   (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

85.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>   (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

14

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

86.    A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  12 U.S.C. § 2605(k)(1)(E).

87.    The RFIs met the definition of a request for information pursuant to 12 C.F.R. § 1024.36(a). See ***Plaintiff's Exhibits 3-4***.

88.    Plaintiff sent the RFIs to Defendant at the Designated Address and Defendant received the RFIs at the Designated Address on June 26, 2020.  See ***id.***

89.    Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Defendant was required to provide written correspondence to Plaintiffs in response to the RFI "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in the RFIs, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

90.    Defendant failed to send and Plaintiff never received any written correspondence from Defendant containing the following items and information on or before the response deadline and Defendant therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1) regarding the RFIs:

- A complete transaction history for the Loan;

- A reinstatement quote;

- A detailed copy of all analyses of the escrow account for the Loan conducted by Defendant;

- Each date upon which Defendant or transferor servicer received a loss mitigation application, whether complete or incomplete, from the Plaintiff regarding the

Loan from April 1, 2018 to the present. Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.";

- A copy of any written correspondence that Defendant or transferor servicer sent to Plaintiff pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from April 1, 2018 to the present. In other words, please provide a copy of any written correspondence Defendant or transferor servicer sent to Plaintiff notifying Plaintiff as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application;

- A copy of any written correspondence that Defendant or transferor servicer sent to Plaintiff pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(c)(1)(ii) regarding the Loan from April 1, 2018 to the present. In other words, please provide a copy of any written correspondence Defendant or transferor servicer sent to Plaintiff notifying Plaintiff as to which loss mitigation options, if any, Defendant or transferor servicer would offer Plaintiff on behalf of the owner or assignee of the mortgage;

- A copy of all trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise that Defendant or transferor servicer has offered to Plaintiff, regardless of whether they were accepted or rejected by Plaintiff;

16

- Each date upon which Defendant or transferor servicer received an executed loss mitigation agreement from Plaintiff regarding the Loan from April 1, 2018 to the present;

- Each date upon which Defendant or transferor servicer received or otherwise came into possession of an appeal of loss mitigation eligibility from Plaintiff regarding the Loan from April 1, 2018 to the present;

- A copy of any written correspondence that Defendant or transferor servicer sent to Plaintiff pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(h)(4) regarding the Loan from April 1, 2018 to the present. In other words, provide a copy of any written correspondence Defendant or transferor servicer sent to Plaintiff stating Defendant's or transferor servicer's determination of whether Defendant or transferor servicer would offer Plaintiff a loss mitigation option based upon an appeal of Defendant's or transferor servicer's denial of Plaintiff's eligibility for any loss mitigation option;

- Servicing notes and communication logs related to Defendant's communications with Plaintiff from March 18, 2020 through present day as to the issues concerning forbearance and the responsive correspondence thereto; and,

- Copies or recordings of any communications between Defendant and Plaintiff, including recordings of any telephone calls between Defendant and Plaintiff in Defendant's possession, occurring from March 18, 2020 through present day that are related to the issues concerning forbearance and the responsive correspondence thereto.

91.  Defendant sent written correspondence improperly stating that the aforementioned

information would not be provided because the requests were overbroad or unduly burdensome. See **Plaintiff's Exhibit 10**.

92.     Defendant's failure to send all of the requested documents and information as required by 12 C.F.R. § 1024.36(d)(1) to Plaintiff constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.36(d)(1) and 12 U.S.C. § 2605(k)(1)(E).

93.     In addition to the damages outlined, *supra*, Defendant's violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) directly and proximately caused Plaintiff to suffer actual damages including but not limited to legal fees and expenses in the preparation of NOE #2 and NOE #3, and ultimately, for the preparation and filing of this Complaint to remedy Defendant's wrongful conduct.

94.     Defendant's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

95.     As a result of Defendant's actions, Defendant is liable to Plaintiff for statutory damages and actual damages as further described, *supra*.  12 U.S.C. § 2605(f)(1).

96.     Defendant's conduct as pled, *supra,* is outrageous, wanton, willful, and shows a conscious disregard for Plaintiff's rights.

97.     Additionally, Plaintiff requests reasonable attorneys' fee and costs incurred in connection with this Complaint.  12 U.S.C. § 2605(f)(3).

## COUNT THREE
### VIOLATIONS OF THE CSPA, R.C. 1345.01, *et seq.*

98.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 51, in their entirety, as if fully rewritten.

99.     R.C. 1345.01(A) defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to

an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

100.    A "consumer transaction" includes "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers." R.C. 1345.01(A).

101.    The Loan signifies a contractual relationship between Defendant and Plaintiff. See ¶ 3 and **_Plaintiff's Exhibit 1_**.

102.    Defendant is a nonbank mortgage lender licensed by the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.01, *et seq.* as License No. RM.850107.000. R.C. 1345.01(K).

103.    Defendant and Plaintiff engaged in multiple "consumer transactions" when Defendant collected Plaintiff's monthly mortgage payments. R.C. 1345.01(A).

104.    Defendant is a "supplier" as it is a nonbank mortgage lender that engages in "consumer transactions" in connection with a residential mortgage. R.C. 1345.01(C).

105.    Plaintiff is a "consumer" as she engaged in "consumer transactions" with Defendant. R.C. 1345.01(D).

106.    "The [CSPA] covers transactions in connection with a residential mortgage loan between nonbank lenders and their customers whether that interaction occurs before, during, or after the transaction." *Powers v. Green Tree Servicing, L.L.C.*, 8th Dist. Cuyahoga No. 102753, 2015-Ohio-3355, at ¶ 15.

107.    "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A).

108.    "No supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with the origination of a residential mortgage. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.031(A).

109.    Ohio Courts have determined that the actions of a supplier in failing to correct errors in the accounting of a mortgage loan, failing to properly investigate borrowers' requests to correct errors, and failing to provide borrowers with requested information constitute unfair or deceptive acts or practices. *See Marais v. Chase Home Finance, LLC*, PIF No. 10003211 (June 6, 2014). A copy of PIF No. 10003211 is attached as ***Plaintiff's Exhibit 18***.

110.    The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

111.    Defendant's actions in failing to meet its obligations under 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, and 12 U.S.C. § 2605(k) constitute unfair and deceptive acts or practices under R.C. 1345.02(A) and/or R.C. 1345.031(A).

112.    Defendant is also liable under the RMLA, R.C. 1345.40(I), *infra*, for its unfair and deceptive acts or practices in violation of the CSPA.

113.    Defendant's actions caused Plaintiff to suffer actual damages, specifically:

    a.  Plaintiff had to retain and pay legal counsel to submit the Forbearance Request, the RFIs, and NOE #1-3 to Defendant, pay postage costs for the mailing of the RFIs and NOE #1-3 s, and pay legal counsel to review the responses to the RFIs and NOE #1-2; and,

    b.  Plaintiff suffered extreme emotional distress directly and proximately caused by Defendant's actions. Plaintiff's extreme emotional distress has

resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

See ¶ 48.

114.    As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, non-economic damages of up to Five Thousand Dollars ($5,000.00), treble damages, costs, and attorneys' fees pursuant to R.C. 1345.09.

## COUNT FOUR
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

115.    Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 51, in their entirety, as if fully rewritten.

116.    "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

117.    Defendant, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

118.    Defendant is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM. 850107.000.

119.    Plaintiff is a buyer, as the Loan is serviced by Defendant, a mortgage servicer. R.C. 1322.01(H).

120.    A registrant, licensee, or person required to be registered or licensed cannot:

(C)    Engage in conduct that constitutes improper, fraudulent, or
       dishonest dealings;
                                    [....]

21

      (I)    Engage in any unfair, deceptive, or unconscionable act or practice prohibited [by the CSPA].

R.C. 1322.40.

121.    Defendant by failing to properly respond to the Forbearance Request, the RFIs, NOE #1, and NOE #2, engaged in conduct that constitutes improper or dishonest dealings in violation of R.C. 1322.40(C).

122.    Defendant's violations of the CSPA constitute violations of R.C. 1322.40(I).

123.    Defendant's actions caused Plaintiff to suffer actual damages, specifically:

    a.    Plaintiff had to retain and pay legal counsel to submit the Forbearance Request, the RFIs, and NOE #1-3 to Defendant, pay postage costs for the mailing of the RFIs and NOE #1-3 s, and pay legal counsel to review the responses to the RFIs and NOE #1-2; and,

    b.    Plaintiff suffered extreme emotional distress directly and proximately caused by Defendant's actions. Plaintiff's extreme emotional distress has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

See ¶ 48.

124.    As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, costs, attorneys' fees, and punitive damages pursuant to R.C. 1322.52.

125.    R.C. 1322.45(A) requires a registrant, licensee, or person required to be registered or licensed to, *inter alia*:

    a.    Comply with all duties imposed by other statutes or common law;

    b.    Act with reasonable skill, care, and diligence; and,

    c.    Act in good faith and with fair dealing.

126.    These duties and standards of care of R.C. 1322.45(A) cannot be waived or modified. R.C. 1322.45(C).

127.    Defendant's actions in failing to meet its obligations under 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, and 12 U.S.C. § 2605(k) constitute violations of R.C. 1322.45(A), (A)(3), and (A)(4).

128.    Defendant 's actions caused Plaintiff to suffer actual damages, specifically:

    a.    Plaintiff had to retain and pay legal counsel to submit the Forbearance Request, the RFIs, and NOE #1-3 to Defendant, pay postage costs for the mailing of the RFIs and NOE #1-3 s, and pay legal counsel to review the responses to the RFIs and NOE #1-2; and,

    b.    Plaintiff suffered extreme emotional distress directly and proximately caused by Defendant's actions. Plaintiff's extreme emotional distress has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

See ¶ 48.

129.    As a result of Defendant's conduct, Defendant is liable to Plaintiff for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kathleen M. Latza prays that this Court enter its order granting judgment in her favor as follows:

A)    For actual damages against Defendant as to all allegations contained in Counts One through Four;

B)    For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for

each and every violation of RESPA as alleged through Counts One through Two;

C)    For statutory damages of at least Two Hundred Dollars ($200.00) for the allegations contained in Count Three;

D)    For non-economic damages of up to Five Thousand Dollars ($5,000.00) for the allegations contained in Count Three;

E)    Treble damages for the allegations contained in Count Three;

F)    For punitive damages for the allegations contained in Count Four;

G)    For costs, and reasonable attorneys' fees; and,

H)    Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Whitney P. Horton*
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Whitney P. Horton
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DANNLAW
Counsel for Plaintiff